722 So.2d 1107 (1998)
STATE of Louisiana
v.
Salvadore J. CANGELOSI.
No. 98-KA-589
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 1998.
*1108 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, Caren Morgan, Assistant D.A.'s, Gretna, LA, for Plaintiff-Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, Gretna, LA, for Defendant-Appellant.
*1109 Before H. CHARLES GAUDIN, C.J., and CHARLES GRISBAUM, Jr. and EDWARD A. DUFRESNE, Jr., JJ.
DUFRESNE, Judge.
On February 6, 1997, the Jefferson Parish District Attorney filed a bill of information charging defendant, Salvadore Cangelosi, with sexual battery, a violation of LSA-R.S. 14:43.1. The matter proceeded to trial before a six person jury at the conclusion of which the jury returned a verdict of guilty as charged.
The court thereafter sentenced him to serve five years at hard labor without benefit of parole, probation, or suspension of sentence. The court afforded defendant credit for time served and further ordered defendant to comply with sex offender registration requirements upon his release. It is from this conviction and sentence that defendant now appeals.

FACTS
In the early morning hours of January 15, 1997, the thirteen-year-old victim, "T.K.," was asleep in a bedroom she shared with her two sisters in her grandfather's Marrero home. Her mother, Terry Cangelosi, was spending the night at her sister's home, along with T.K.'s two sisters and baby brother. The only person in the house with T.K. was her step-father, Salvadore Cangelosi. T.K.'s earlier plans to spend the night at the home of her friend had been canceled.
T.K. testified that she awoke at 3:00 a.m. to find defendant shining a small flashlight into her eyes. The defendant had parted her legs and inserted his finger into her vagina. She testified that she was wearing underwear, but that defendant put his finger through an opening in the fabric. The child turned over in the bed in an attempt to fend off defendant's actions, and he thereafter left the room. The defendant soon returned to the room carrying something in his hand. The child jumped up from the bed in fear. The defendant asked her if she was getting ready for school. She responded that she did not have school that day. The defendant went into the bathroom, then left the house and went into the yard.
T.K. closed the door to her room and called her ex-boyfriend on his pager, dialing 9-1-1 at the end of his pager number, as it was a code between the two of them. The 9-1-1 call was routed to Kimberly Regan, a dispatcher at the Jefferson Parish Fire Department. Although it was recorded as a "hang up" call, the Jefferson Parish Sheriff's Office responded. When the first officer arrived, T.K. who was extremely upset, climbed out of her bedroom window, and went directly to the police car, telling the officer that her step-father had fondled her in bed.
Shortly after the officers arrived at the house, they observed defendant at the front door, wearing only boxer style underwear. The defendant went back inside the house and returned wearing shorts and a shirt. Sergeant Wayne Kron, the supervising officer, arrived at the scene to find T.K. crouched on the back floorboard of one of the police vehicles. She appeared to be shaken, and was crying. The child told Kron that her step-father had awakened her while she was in bed, and had put his finger inside her vagina. She further disclosed that defendant had carried a flashlight. T.K. told the officer, "This happened before and I'm not going to put up with it any more."
The officers went inside the house to speak with defendant. Kron advised defendant of his Miranda rights. The officers questioned defendant about the child's allegations, and defendant denied any knowledge of such an incident. He stated that he had awakened his step-daughter to get her ready for school. The child, however, told the officers that she did not have school that day. The defendant said T.K. had accused him of similar acts before, and that nothing had come of those accusations. The defendant further stated that he received counseling for about a year after the earlier incident.
The officers asked defendant whether he had a flashlight, and he responded that there was one in the back yard, but that it was broken. With defendant's permission, the officers searched the yard and garage, but did not recover a flashlight. One of the officers telephoned Mrs. Cangelosi and notified her of the child's allegations. When *1110 Mrs. Cangelosi thereafter returned to the house, the officers asked her if there was a flashlight in the house, and she directed them to a cabinet in defendant's bedroom. There they recovered a six inch long flashlight, which the child identified as the one defendant had used. The officers then placed defendant under arrest.

IMPROPER ADMISSION OF EVIDENCE
In his first assignment of error, defendant contends that the trial court erred in admitting hearsay evidence of other crimes which was offered under the guise of State v. Prieur, 277 So.2d 126 (La.1973).
At trial, evidence was introduced of an earlier instance of sexual abuse by defendant. Specifically, T.K. testified that on September 11, 1995, her mother left the house to go to a nearby grocery store. She left T.K. at home to care for her infant brother. Only the two children and defendant were in the house. The defendant told T.K. to take a bath in her mother's bathroom. While she was bathing, defendant entered the room and began to wash her hair and her body. In the process, he fondled her breasts and genitals. He inserted his finger into her vagina. When her mother returned, T.K. waited for an opportunity to report the incident, but her mother again left the house. On the following day, the child reported the incident to Victoria Majors, a school guidance counselor. Ms. Majors in turn reported it to the Office of Community Services. Defendant now complains that evidence of his alleged 1995 molestation of T.K. should not have been admitted at trial as it constituted improper "other crimes" evidence.
Generally, "other crimes" evidence is not admissible at trial. However, when such evidence tends to prove a material issue and has independent relevance other than showing the defendant's bad character, it may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule. State v. Jackson, 625 So.2d 146 (La.1993); State v. Sterling, 95-673 (La.App. 5 Cir. 2/27/96), 670 So.2d 1316.
Evidence of other acts is allowed to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." LSA-C.E. art. 404B(1). One of these factors must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible. State v. Jackson, supra. Moreover, the probative value of the "other crimes" evidence must outweigh its prejudicial effect. State v. Kahey, 436 So.2d 475 (La.1983); State v. Wright, 94-682 (La.App. 5 Cir. 1/18/95), 650 So.2d 291, writ denied, 96-0855 (La.9/20/96), 679 So.2d 430.
When a defendant denies the sex offense with which he is charged occurred at all, prior sex offenses are relevant to show motive, which the jurisprudence often calls "lustful disposition." State v. Coleman, 95-1890 (La.App. 4 Cir. 5/1/96), 673 So.2d 1283, writ denied, 97-0042 (La.10/31/97), 703 So.2d 11. However, before such evidence is admitted at trial, the state must comply with the procedural requirements set forth in State v. Prieur, supra.
The improper admission of other crimes evidence is subject to harmless error review. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, writ denied, 95-2958 (La.4/8/96), 671 So.2d 332. Harmless error exists where the guilty verdict actually rendered at trial was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Everidge, 96-2665 (La.12/2/97), 702 So.2d 680.
In the context of this assignment, defendant first complains that the state's written Prieur notice was insufficient, as he received it only one day prior to trial. The defendant did not challenge the sufficiency of the notice prior to trial, nor did he request a trial continuance in order to prepare for the evidence cited in the state's notice. The defendant did not, therefore, properly preserve the issue for appeal. See State v. Kahey, supra; LSA-C.Cr.P. art. 841. In any *1111 case, defendant failed to show how he was prejudiced by the "last minute" notice. The defendant was able to adequately plan his trial strategy. Defense counsel conducted a competent cross-examination of the victim regarding the "other crime." Counsel also produced several witnesses as part of defendant's case in chief. See State v. Pardon, 97-248 (La.App. 5 Cir.10/15/97), 703 So.2d 50.
The defendant next contends that the state was entitled to introduce only testimony of the victim as to the alleged 1995 molestation in the bathtub. He argues that the testimony of Dr. Benton and Ms. Majors, the victim's school counselor, went beyond mere corroboration of the victim's testimony. He complains that this testimony, along with the videotaped interview of the victim, constituted inadmissible hearsay, and that it had a prejudicial effect which outweighed its probative value.
We will first turn our attention to the testimony of Dr. Benton. At trial, Dr. Benton was allowed to testify as to his examination of the victim after the 1995 molestation, and her comments to him during the exam. It is noted that the victim herein did not see the doctor immediately after the 1995 molestation took place. T.K. was referred to Dr. Benton either by law enforcement officers or by child protective services about a month after the alleged incident. Dr. Benton saw the child primarily for forensic purposes, and did not ultimately treat her for any injuries or illness. However, Dr. Benton found it necessary to do an extensive examination and to take a complete history to determine whether T.K. had suffered injuries beyond what was initially disclosed.
We must now determine whether Dr. Benton's testimony constituted inadmissible hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." LSA-C.E. art. 801(C). Hearsay is inadmissible unless it falls within an exception. LSA-C.E. art. 802. LSA-C.E. art. 803(4) provides an exception to hearsay for "[s]tatements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history ... insofar as reasonably pertinent to treatment or diagnosis in connection with treatment." Official Comment (b) under this article provides, "The phrase `reasonably pertinent to treatment or diagnosis in connection with treatment' has been interpreted to limit the scope of this exception to the kind of statements that are usually relied upon by physicians in their diagnosis and treatment of patients."
It is questionable whether Dr. Benton's testimony falls within this exception to the hearsay rule. However, even assuming that Dr. Benton's testimony constitutes inadmissible hearsay, we find that any error committed by the trial judge in admitting this evidence is harmless. T.K. herself gave Prieur testimony at trial. The victim's statements to the doctor as recounted in his testimony were substantially the same as the victim's own testimony. Moreover, the evidence against defendant was, on the whole, very strong.
We now turn our attention to the testimony of Ms. Victoria Majors, the school guidance counselor to whom T.K. reported the prior incident of molestation. We find that Ms. Majors' testimony about the 1995 bathing incident constitutes admissible nonhearsay under LSA-C.E. art. 801 D(1)(d), which provides, in pertinent part, that: "A statement is not hearsay if ... [t]he declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior." See also State v. Small, 29,137 (La.App. 2 Cir. 4/2/97), 693 So.2d 180; State v. Valentine, 95-0970 (La.App. 4 Cir. 1/19/96), 668 So.2d 383. In the present case, the victim testified at trial that the counselor was the first person to whom she reported this earlier molestation. The account of the incident given by Ms. Majors corresponded with the victim's own testimony, and the victim was subject to cross-examination. As defendant claims, some of Ms. Majors' testimony went beyond the scope of the victim's own testimony. Ms. Majors testified, for example, that T.K. had a history of being quiet and unresponsive at school, and that she had worked *1112 to help the child to develop socialization skills. This testimony was not elicited by the state, but by defendant's own attorney.
We next consider the admissibility of the videotape of the victim's 1995 interview, which was substantially the same as the victim's own trial testimony. The state's intent in introducing the tape was to show the victim's recollection of the 1995 molestation at a point closer in time to the event. It does not appear that any prejudice caused by the admission of the tape outweighed its probative value. Furthermore, the tape does not constitute hearsay, as the declarant (i.e., the victim), testified at trial, and was subject to cross-examination.
The defendant's final complaint is that the 1995 incident was not similar enough to the instant facts to qualify it as Prieur evidence. The testimony at trial does not support this assertion. The victim was the same in both instances. In both cases defendant acted when he was essentially alone with the victim in the family home. During both incidents, defendant touched T.K. in the same manner and was dressed only in his underwear. The only significant difference between the two incidents is that defendant apparently exposed himself to T.K. in 1995, but did not in the instant case.
Based on the foregoing discussion, we reject the arguments raised by defendant and find no reversible error in the trial court's admission at trial of evidence of defendant's 1995 molestation of the victim.

ERRORS PATENT
Defendant also assigns as error any and all errors patent on the face of the record. We have reviewed this case for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Such a review reveals no errors patent.
Finding no merit to the issues raised on appeal, we hereby affirm the defendant's conviction and sentence.
AFFIRMED.