749 So.2d 19 (1999)
STATE of Louisiana
v.
Dean P. BLANCHARD.
No. 99-KA-599.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1999.
*23 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Quentin P. Kelly, Vincent Paciera, Jr., Assistant District Attorneys, Gretna, for Plaintiff/Appellee.
Arthur A. Lemann, III, New Orleans, for Defendant/Appellant.
Panel composed of Judges H. CHARLES GAUDIN, CHARLES GRISBAUM, Jr., and SOL GOTHARD.
GOTHARD, J.
On June 27, 1996, the Jefferson Parish District Attorney filed a two-count bill of information naming Dean Blanchard and his wife, Jodie Blanchard, as defendants. Count 1 of the bill charged both with possession with intent to distribute over 28 ounces of cocaine, a violation of LSA-R.S. 40:967 F.[1] Count 2 charged only Dean Blanchard with possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1. Count 2 of the bill of information was subsequently amended to change the charge to possession of a firearm while in possession of a controlled dangerous substance, to wit, marijuana. LSA-R.S. 14:95 E.
Defendant went to trial and the jury returned a verdict of not guilty as to Count 1. The jury deadlocked as to Count 2. Defendant was tried a second time as to Count 2, and was found guilty as charged. The trial court sentenced defendant to seven years at hard labor, without benefit of parole, probation or suspension of sentence. Subsequently, defendant pled guilty to a habitual offender bill of information, the trial court vacated the original sentence and again imposed a term of seven years as defendant's enhanced sentence. The court ordered that the sentence be served without probation or suspension of sentence in accordance with LSA-R.S. 15:529.1 G. The court further ordered that the sentence run concurrently with a sentence he was serving in federal prison. This appeal followed.

FACTS
The following facts were elicited at defendant's second trial. On February 23, 1996, Sergeant Charles DeLaughter of the Jefferson Parish Sheriff's Office Narcotics Division prepared an application for a search warrant for Dean Blanchard's residence on Chee Chee Lane on Grand Isle. He presented the application to Judge Walter Rothschild, who issued the requested search warrant.
At 3:00 a.m. on February 24, 1996, DeLaughter went to defendant's residence to execute the warrant. He was accompanied by Lieutenant Tim Miller, Agent Robert Gerdes and Agent Troy Bradbury of the Sheriff's Office. The Jefferson Parish deputies enlisted the assistance of two officers with the Grand Isle Police Department. *24 Upon arriving at defendant's trailer home, the Grand Isle officers knocked on the front door. When defendant opened the door, the sheriff's deputies approached and explained that they were there to execute a search warrant. They also advised defendant of his Miranda rights.
Both DeLaughter and Miller testified that defendant was cooperative. Defendant told the officers that he had a small amount of marijuana in the house. When the officers asked whether he had any weapons, defendant said he had an Uzi pistol. The officers located the gun in a kitchen cabinet. They found a bag with a small amount of marijuana under a sofa cushion. Two marijuana cigarettes were found in an ashtray. The officers secured those items, and placed defendant under arrest.[2]
Defendant testified at trial that the Uzi and the marijuana belonged to him. He owns a seafood shipping business, a trade which requires that he handle a great deal of cash. He purchased the gun from a former employee in the mid-1980's to deter potential robbers. Defendant further explained that he and his wife used marijuana for fertility problems, on the advice of a physician.
Defense witness Carla McVey testified that she and her ex-husband, Lane Landry, had sold defendant the Uzi. She had originally purchased the weapon for Landry from a gun dealer. Phillip Blanchard, defendant's father, testified that he maintains financial records for his son's company, and that a great deal of the company's business is done in cash. Another defense witness, Gavin Parria, testified that he is a commercial shrimper. He does a great deal of business with defendant, most of it in cash.

ANALYSIS
In this first assignment of error, defendant alleges that the trial court committed reversible error by denying his motion to quash. In that motion, and by this assignment, defendant challenges the constitutionality of LSA-R.S. 14:95 E,[3] arguing that the statute violates equal protection in that it unfairly penalizes misdemeanor drug offenders by depriving them of their constitutional right to bear arms.
The right to bear arms is established by the Second Amendment to the United States Constitution and Article I, § 11 of the Louisiana Constitution. The State of Louisiana is entitled to restrict that right for legitimate state purposes, such as public health and safety. State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324; State v. Hamlin, 497 So.2d 1369 (La.1986); State v. Williams, 98-1006 (La. App. 5 Cir. 3/30/99), 735 So.2d 62. However, the Fourteenth Amendment to the United States Constitution, and Article I, § 3 of the Louisiana Constitution provide that no person shall be denied the equal protection of the laws. Equal protection requires that there be a rational basis for laws which discriminate between similarly situated groups of persons who are not members of a "suspect class." Marshall v. United States, 414 U.S. 417, 422, 94 S.Ct. 700, 704, 38 L.Ed.2d 618 (1974); State v. Sandifer, 95-2226 at p. 10, 679 So.2d at 1333. A rational basis is a rational relationship between a legitimate state *25 interest and the provision enacted. Marshall, 414 U.S. at 422, 94 S.Ct. at 704.
In the examination of a statute for constitutionality, courts consider the following:
In determining the constitutionality of a statute, we must follow the basic rules of statutory construction. A statute is presumed to be constitutional, and the burden of clearly establishing unconstitutionality rests upon the party who attacks the statute. A statute should be upheld whenever possible. Louisiana criminal statutes must be "given genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. La. R.S. 14:3." (Citations omitted).
State v. Muschkat, 96-2922, p. 4 (La.3/4/98), 706 So.2d 429, 432.
This court has articulated the legislative intent of La. R.S. 14:95 E:
The aim of the legislature in enacting [La.-R.S. 14:95 E] was to criminalize possession and/or use of a dangerous weapon, including a firearm, in order to prevent those engaged in drug use and distribution from engaging in the violent behavior endemic to the drug trade. This statute was enacted not solely for the protection of police officers... but also for the protection of the general public.
State v. Williams, supra, 98-1006 at p. 3, 735 So.2d at 69. See also, State v. Warner, 94-2649, pp. 5-6 (La.App. 4 Cir. 3/16/95), 653 So.2d 57, 61-62
In the allegation of error before us, defendant asserts that the statute discriminates against him, a misdemeanor drug offender who exercised his constitutional right to own a weapon, by depriving him of his constitutional right to bear arms. He reasons that there is no rational relationship between the provision's broad scope and its legislative purpose of preventing drug-related crimes of violence. He argues that the legal possession of a gun along with a small amount of marijuana intended for personal use was not the sort of conduct that the provision was intended to protect against. We disagree.
The statute at issue, even as applied to one in possession of a misdemeanor amount of marijuana, serves the legitimate state purpose of protecting law enforcement officers and the public from those who might commit a violent act with a weapon while under the influence of drugs. Accordingly, we find no merit to defendant's allegation that La. R.S. 14:95 E is unconstitutional.
In his second allegation of error, defendant alleges that the trial court committed reversible error by denying the motion to suppress the evidence. He contends that the affidavit upon which the search warrant was based provided insufficient facts to support probable cause for a search, and that it contained material misrepresentations and omissions, and therefore the evidence collected at his home pursuant to the warrant should have been suppressed.
A search warrant may issue only upon probable cause established to the satisfaction of a judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant. LA.-Const. art. I, § 5; LA.-C.Cr.P. art. 162. Probable cause exists "when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched." State v. Johnson, 408 So.2d 1280, 1283 (1982); State v. Bailey, 97-302, p. 8 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, 597, writ denied, 98-1458 (La.10/30/98), 723 So.2d 971.
An issuing magistrate must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, there is a "fair probability" *26 that evidence of a crime will be found in a particular place. The task of the reviewing court is simply to insure that the magistrate had a "substantial basis" for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 239-241, 103 S.Ct. 2317, 2322-2323, 76 L.Ed.2d 527 (1983); State v. Byrd, 568 So.2d 554 (La. 1990). A magistrate's determination of probable cause, prior to issuance of a search warrant, is entitled to great deference by the reviewing court. Moreover, marginal cases should be resolved in favor of the magistrate's findings. State v. Bailey, supra.
In the present case, defendant complains that the affidavit was insufficient to supply probable cause for a search of his residence. We disagree. In the affidavit, Sgt. Charles DeLaughter alleged that during the month of February, 1996, a "reliable confidential informant" told him and Lt. Miller that he was familiar with a Bill Denning who was selling cocaine in Jefferson Parish. The informant also told the officers that, according to Denning, an individual named "Dean" in Grand Isle was supplying the cocaine.
The affidavit further states that the informant arranged for an undercover narcotics officer, Agent Curtis,[4] to meet with Denning on February 16, 1996. On that day, as well as on February 18 and 23, 1996, Curtis purchased cocaine from Denning. According to the affidavit, Denning told the informant on February 16 that he would be going to Grand Isle to purchase cocaine from Dean. The affidavit also purports that Denning told Agent Curtis that he was getting his cocaine from Grand Isle.
The affidavit purports that on February 19, 1996, investigators from the Sheriffs Office, in cooperation with Grand Isle's police chief, conducted a surveillance of Denning's activities. Chief Roscoe Besson, who is familiar with both Denning and Blanchard, saw the two men meet once at Blanchard's seafood business, and again at Blanchard's residence. Upon Denning's return to his own home on Concord Street, the informant told investigators that Denning had picked up three more ounces of cocaine while at Blanchard's residence.
The affidavit states that on February 23, 1996, Agent Curtis arranged by telephone to purchase four ounces of cocaine from Denning. During the phone conversation, Denning told Curtis he had picked up eight ounces of cocaine in Grand Isle. At 6:30 that evening, Denning called Curtis again to say he would check on the status of the four ounces of cocaine. Denning and Curtis agreed to meet at Stumpf Boulevard and Wright Avenue in Gretna. Later that night, the two met as planned. Denning sold four ounces of cocaine to Agent Curtis for $3,600.00. After Denning left the scene of the transaction, officers stopped him and placed him under arrest.
We find that the allegations of the affidavit supplied probable cause for a search of defendant's residence.
Defendant argues that the affidavit presented insufficient proof as to both the informant's reliability and the credibility of Denning's hearsay statements to Agent Curtis and the informant.
"The credibility of an anonymous informant can be supported by `any specific independent corroboration of the accuracy of the instant report.'" State v. Stephenson, 387 So.2d 1111, 1113 (1980), quoting State v. Paciera, 290 So.2d 681, 686 (1974). See also, State v. Melbert, CR-140, p. 5 (La.App. 3 Cir. 11/30/94), 649 So.2d 740, 745. Assertions in an affidavit that the informant has previously given information leading to arrests are adequate support for the informant's reliability, as are the affiant's knowledge (as opposed to rumor) of prior offenses committed by the defendant. Stephenson, supra.
*27 In the instant case, the affiant asserted, "This reliable confidential informant has supplied the Sheriff's Office with information that has led to the arrest and conviction of narcotics traffickers. The reliable confidential informant has also supplied the Sheriff's Office with information that has never proven to be false." The affiant further explained how the informant obtained his information, i.e., that Denning told him "Dean" in Grand Isle was his source for cocaine. In his testimony at the motion hearing, Sgt. Miller testified that the informant was not under indictment, nor was he wanted for illegal activity. We believe that this was sufficient corroboration of the credibility of the confidential informant.
Defendant asserts that the information the informant gave officers about him was unreliable hearsay. A search warrant affidavit may be based wholly on hearsay, but if the affidavit contains hearsay, there must be enough details to allow the magistrate to reasonably infer that the informant and his information are reliable. State v. Stephenson, supra, at 1112-1113. The affiant here asserted that the Sheriff's Office was familiar with both Denning and Dean Blanchard. The affidavit states that Denning also gave Agent Curtis information about his cocaine source, and therefore the issuing judge had Curtis's statements as well and the informant's word. Furthermore, Denning was known to the Sheriff's Office as a drug trafficker, and defendant had a prior narcotics arrest. Also, the affidavit purports that officers acted on the informant's information by enacting a surveillance on Denning. The surveillance officers saw defendant and Denning together on Grand Isle on February 19, the day Denning had told Agent Curtis he planned to pick up cocaine from "Dean." We find that, contrary to what defendant argues, the judge who viewed the affidavit had more to go on than reputation and association.
Defendant next asserts that the affidavit contains intentional and material misrepresentations. An affidavit supporting a search warrant is presumed to be valid, and a defendant has the burden of proving that the representations in the affidavit are false. State v. Singleton, 98-387 (La.App. 5 Cir. 10/28/98), 723 So.2d 484, writ denied, 99-0101 (La.5/7/99), 741 So.2d 30; LSA-C.Cr.P. art. 703 D. When a defendant proves the affidavit contains false statements, it should be determined whether the misrepresentations are intentional or unintentional. The defendant must prove by a preponderance of the evidence that the misrepresentations in the affidavit are intentional. State v. Fugler, 97-1936 (La.App. 1 Cir. 9/25/98), 721 So.2d 1, amended on rehearing on other grounds, 97-1936 (La.App. 1 Cir. 5/14/99), 737 So.2d 894. The making of material and intentional misrepresentations to a magistrate is considered a fraud on the courts and will invalidate the warrant, and the items seized pursuant to the warrant will be suppressed. State v. Byrd, 568 So.2d at 559. However, if the misrepresentations or omissions are inadvertent or negligent, the warrant will be retested for probable cause after supplying that which had been omitted or striking any misrepresentations. State v. Byrd, supra; State v. Lingle, 436 So.2d 456 (La.1983).
Defendant focuses on the fact that the affidavit does not relate that the confidential informant had a prior record, and does not state that the informant was paid by the officers for his services. In our review of the record, we find that this does not appear to have been an intentional omission calculated to deceive the issuing judge, or to hide material facts. Rather, the officers appear to have operated under the assumption that law enforcement officials, including judges, are generally aware that police frequently use informants who themselves might have criminal records or will aid police only in exchange for monetary compensation.
*28 Defendant also complains that the affiant hid the nature of his (defendant's) prior narcotics arrest so as to make it appear more serious, and more recent, than it actually was. Sgt. DeLaughter testified at the motion hearing that, at the time he drew up the affidavit, he knew that defendant's prior arrest was one for possession of mescaline in 1980. The exclusion of this information was apparently intentional, although it is difficult to see how the omission was material to the issuing judge's decision. Even considering that the arrest was nearly twenty years ago, the affidavit states that DeLaughter was familiar with defendant from "previous investigations concerning Blanchard and his involvement in narcotics trafficking." Moreover, Sgt. DeLaughter testified at the motion hearing that he knew defendant to be classified as a "career criminal," as he was so listed on the police computer.
Defendant finally argues the affidavit is misleading in that it asserts that defendant's relationship with Denning was one which was based on the exchange of narcotics, while Denning testified at the motion hearing that the only business he does with defendant is related to defendant's seafood shipping company. Moreover, Denning stated that he has never told anyone defendant was his source for drugs. The trial court could have given little credence to Denning's testimony, in view of the fact that Denning was convicted of two counts of distribution of cocaine in conjunction with this investigation.
The sufficiency of the affidavit seems to rely on the statements made by Denning to the informant and the undercover agent in which he mentioned "Dean" and Grand Isle. Defendant argues that the tape recordings made by the undercover agent of his conversations with Denning do not show that Denning ever made such a statement. After a review of the record, we note that not all conversations between Agent Curtis and Denning (and none of the conversations between the informant and Denning) were recorded, and that the recordings made were not wholly reliable. The validity of the information in the affidavit greatly depended on whether the affiant, in good faith, believed the information he received from the informant and the undercover agent. We find that the defense failed to prove, by a preponderance of the evidence, that the statements in the affidavit were false or misleading. There is essentially nothing in the record to disprove the assertion that Denning told the informant and Agent Curtis that he was buying cocaine from someone named Dean in Grand Isle.
Accordingly, we find that the trial court did not err in denying defendant's motion to suppress the evidence.
In his third allegation of error, defendant complains he was prejudiced by the trial court's denial of his motion to reveal the identity of the confidential informant. Defendant contends that the informant was the only person who could either confirm or deny that Denning told him defendant was his drug source.
As a general rule, an informant's identity is privileged information. This privilege is based on the public policy concerns of protecting law enforcement and of encouraging private citizens to supply information to police without fear of reprisal. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. Zapata, 97-1230 (La.App. 5 Cir. 5/27/98), 713 So.2d 1152, writ denied, 98-1766 (La.11/6/98), 727 So.2d 443. The identity of the informant should be made known to the accused only when his right to prepare his defense outweighs the need for protection of the flow of information. Roviaro v. United States, supra; State v. Zapata, supra; State v. Fefie, 96-605 (La. App. 5 Cir. 3/25/97), 692 So.2d 1236. The burden is on the defendant to show exceptional circumstances warranting disclosure of the confidential informant's name. State v. Davis, 411 So.2d 434 (La.1982). The trial court is accorded great discretion *29 in making such a determination. State v. James, 396 So.2d 1281 (La.1981); State v. Zapata, supra; State v. Becnel, 95-591 (La.App. 5 Cir. 1/30/96), 668 So.2d 1281.
In this case, we find that defendant did not meet his burden of proving that the informant's participation in the transactions leading to defendant's arrest was such that the state was required to disclose the informant's identity. There was evidence to show that the informant was at the scene of the initial cocaine transaction between Denning and the undercover agent on February 16; however, the testimony established that the informant did not actually participate in that transaction. There is nothing in the record to show any informant participation in the February 19 transaction between Denning and defendant which was purported to have occurred at defendant's home. The mere presence of the informant, without more, is not sufficient to warrant disclosure of the informant's identity. State v. Zapata, 97-1230 at p. 6, 713 So.2d at 1158-1159.
Defendant argues that the informant's identity was important to his defense, as the informant's testimony might have helped him to refute the allegations in the search warrant. However, the record shows that defendant in fact knew the identity of the informant, and could have subpoenaed him to testify had he so chosen. Therefore, he cannot claim prejudice by the state's failure to reveal same. State v. Robinson, 98-1347 (La.App. 5 Cir. 6/30/99), 738 So.2d 166.
In this fourth assignment of error, defendant alleges that he was prejudiced by the trial court's refusal to grant a mistrial or to admonish the jury after the state made improper reference to other crimes.
On the day of trial in this matter, the trial court granted the state's motion in limine, ordering that there be no mention that the second trial was the result of a hung jury in the first trial. Also on that day, defendant made an oral motion in limine, asking that the court order the state to refrain from making or eliciting any reference to possession of cocaine, as he had been acquitted on the cocaine charge, which motion was also granted.
Defendant complains of the following exchange between the prosecutor and state's witness, Lt. Tim Miller, on re-direct examination:
Q. Without specifying what charges, Lieutenant Miller, he was arrested for numerous charges that night; is that correct?
A. Yes, sir.
Q. It wasn't just simple possession of marijuana?
A. That's correct.
Generally, evidence of other crimes or bad acts is inadmissible at a criminal trial unless the probative value of the evidence outweighs its prejudicial effect, and unless it falls under one of the statutory or jurisprudential exceptions to the exclusionary rule. State v. Johnson, 94-1379 (La.1/27/95), 664 So.2d 94; State v. Cangelosi, 98-589 (La.App. 5 Cir. 11/25/98), 722 So.2d 1107.
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;....
La.C.Cr.P. art. 770.
A mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when trial error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. State v. Ratcliff, 98-101 (La.App. 5 Cir. 2/23/99), 731 So.2d 356.
*30 In this case, the reference complained of is clearly an allusion to other crimes, evidence of which would not have been admissible at trial. However, there was no specific mention of the crimes with which defendant was charged at the time of his arrest. La.C.Cr.P. art. 770 is not applicable unless the inference clearly constitutes a comment on other crimes committed or alleged to have been committed by the defendant. State v. Rhodes, 95-54, p. 4 (La.App. 5 Cir. 6/28/95), 657 So.2d 1373, 1376-1377; writ denied, 95-2265 (La.3/14/97), 690 So.2d 28.
Furthermore, we note that an improper reference to other crimes is subject to the harmless error rule. State v. Johnson, 94-1379 at p. 7, 664 So.2d at 101-102. Based on the record before us, we believe that the verdict rendered was unattributable to any error which might have been committed by the trial court's failure to grant a mistrial. We find no merit to this assignment of error.
In allegation of error number five, the defendant alleges that the trial court committed reversible error by permitting the state to refer to an extraneous and prejudicial matter in closing argument. Defendant argues that he was prejudiced by inflammatory and irrelevant comments made by the prosecutor in his rebuttal argument. Defendant specifically complains of the analogy the prosecutor drew between his defense in this case, and a case in New Orleans where a young female tourist was killed by a recklessly fired bullet on New Year's Eve.
La.C.Cr.P. art. 774 confines the state's rebuttal argument to "answering the argument of the defendant." Although prosecutors are generally allowed much latitude in formulating tactics for closing arguments, they may not resort to personal experience or turn argument into a plebiscite on crime. State v. Rochon, 98-717 at p. 5 (La.App. 5 Cir. 3/10/99), 733 So.2d 624 at 630. However, a conviction will not be reversed due to improper remarks during arguments unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Langley, 95-1489, p. 5 (La.4/14/98), 711 So.2d 651, 659, rehearing granted in part on other grounds; State v. Rochon, supra; State v. Durham, 94-1036, p. 14 (La.App. 5 Cir. 4/16/96), 673 So.2d 1103, 1120.
We have reviewed the argument complained of herein and we find that the prosecutor's references to the other case were offered in rebuttal to analogies made by the defense counsel in his closing argument. Furthermore, we do not believe that the remarks contributed to the jury's verdict. The trial court instructed the jury not to go beyond the evidence in making its determination, and further charged the jury that evidence includes "testimony, documentary materials, physical objects or the lack of evidence." The court also instructed that "[s]tatements and arguments made by the attorneys are not evidence." Accordingly, we find no reversible error.
Defendant next argues that the cumulative effect of this alleged error, along with the other errors he cites, was sufficient to warrant reversal of his conviction. However, on the issue of cumulative error, the Louisiana Supreme Court has said that it is "unwilling to say that the cumulative effect of assignments of error lacking in merit warrants reversal of a conviction [or sentence]." State v. Tart, 93-0772, p. 37 (La.2/9/96), 672 So.2d 116, 154, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996), quoting State v. Sheppard, 350 So.2d 615, 651 (La.1977). This court likewise is unwilling to say that the cumulative effect of defendant's allegations of error, which we have found individually are lacking in merit, warrants a reversal of defendant's conviction.
In assignments of error six and seven the defendant alleges that the trial court committed reversible error by failing to give requested jury instructions and by *31 failing to list "simple possession of marijuana" as a responsive verdict.
During the course of trial, defense counsel moved the court to accept an instruction which included the following choice of lesser included offenses:
(1) Guilty of attempted possession of a firearm while in possession of a controlled dangerous substance (marijuana); or
(2) Guilty of the simple possession of marijuana.
The trial court denied counsel's proposed jury instruction. The trial court ultimately instructed the jury that the only responsive verdicts were guilty of attempted possession of a firearm while in possession of a controlled dangerous substance (marijuana), and not guilty.
La.C.Cr.P. art. 814 lists responsive verdicts for certain enumerated offenses; however, "possession of a firearm while in possession of a controlled dangerous substance" is not one of the offenses listed in C.Cr.P. art. 814. Thus, La.C.Cr.P. art. 815 controls here. That article provides:
In all cases not provided for in Article 814, the following verdicts are responsive:
(1) Guilty;
(2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or
(3) Not guilty.
The trial court shall charge the jury as to the law applicable to each offense when the offense charged includes other "lesser" offenses of which the accused could be found guilty under C.Cr.P. art. 815. La. C.Cr.P. art. 803; State v. Dufore, 424 So.2d 256 (La.1982).
However,
... [A]lthough the court must charge the jury of the law applicable to lesser included offenses under LA.-C.Cr.P. art. 803, the charges must be pertinent; there must be evidence which would support a conviction of the lesser offenses. LA.-C.Cr.P. art. 807; State v. Anderson, 390 So.2d 878 (La.1980); State v. Toomer, 395 So.2d 1320 (1981). A trial judge is required "to charge the jury as to the law applicable to the case, under which he is required to cover every phase of the case supported by the evidence, whether or not accepted by him as true." (Emphasis supplied). State v. Marse, 365 So.2d 1319 at 1323 (La.1978). See State v. Mead, 377 So.2d 79 (La., 1979). A comment at La.L.Rev. 211 points out that LA.-C.Cr.P. art. 803 can reasonably be interpreted as requiring only those charges of which the accused can be found guilty under the indictment and the evidence.
State v. Henry, 449 So.2d 486, 488-489 (La.1984).
In this case, while all of the elements of possession of marijuana are included in the charged offense, the requested jury charge would not have been appropriate, considering the evidence produced at trial. Defendant admitted in his own trial testimony that he owned a gun, and that he kept it in a cabinet in his home. A finding of guilty of simple possession of marijuana would have required that the jury ignore that evidence. Compare, State v. Thornton, 611 So.2d 732 (La.App. 4 Cir.1992). Therefore, these assignments of error merit no consideration.

ERRORS PATENT
We have reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Godejohn, 425 So.2d 750 (La. 1983); State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find none which merit action.

CONCLUSION
For the above discussed reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
GAUDIN, J., dissents with reasons.
*32 GAUDIN, J., dissenting.
I respectfully dissent. Dean P. Blanchard's conviction under LSA-R.S. 14:95(E) was inappropriate. The clear legislative intent of the statute was to punish those who are in possession of a firearm while also in possession of a controlled dangerous substance. "Possession" of a firearm within the scope of this statute means a firearm actually on one's person or in clear view at the time of the arrest or in a closeby, easily reached place. "Possession" does not include a pistol situated in a kitchen cabinet obviously not in the same room where small amounts of marijuana were found.
NOTES
[1] The state subsequently dismissed the charge against Jodie Blanchard.
[2] Although the record shows the officers seized a sizeable amount of cocaine at defendant's residence, testimony concerning the cocaine was excluded from defendant's second trial.
[3] La. R.S. 14:95 E provides, in pertinent part:

If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while committing or attempting to commit a crime of violence or while in the possession of or during the sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence.
[4] Curtis was an undercover name used by the agent, whose real name is Michael Stewart.