767 So.2d 862 (2000)
STATE of Louisiana
v.
Trohne J. JONES.
No. 00-KA-162.
Court of Appeal of Louisiana, Fifth Circuit.
July 25, 2000.
*864 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Caren Morgan, Cameron Mary, Vincent Paciera, Jr., Assistant District Attorneys, Gretna, LA, for Plaintiff-Appellee.
Kevin V. Boshea, New Orleans, LA, for Defendant-Appellant.
(Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and MADELINE JASMINE, Judge Pro Tempore).
DUFRESNE, Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Trohne Jones, with possession of a firearm while in possession of a controlled dangerous substance, cocaine. LSA-R.S. 14:95 E. The matter proceeded to trial before a twelve person jury at the conclusion of which defendant was found guilty as charged. The court thereafter sentenced defendant to five years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant now appeals.

FACTS
Just after midnight on August 31, 1997, several officers with the Jefferson Parish Sheriff's Office Westbank Street Crimes Unit were on patrol in the 500 block of Commerce Street in Gretna, a high crime area known for a proliferation of guns and narcotics. Deputies Steven Abadie and Thomas Bryson, who were traveling in an unmarked police unit, saw two men engaging in a hand-to-hand transaction in front of an apartment complex. Defendant, Trohne Jones, was one of the men. Believing the men were involved in a narcotics exchange, the officers approached them to investigate. Defendant turned and looked at Deputy Abadie. As he did so, Abadie saw a dark object in defendant's waistband.
Defendant fled on foot, and Deputy Abadie, along with Officers Fred Yorsch and Roy Spizale, chased him. During the chase, the defendant pulled a gun from his waistband and pointed it at Officer Abadie. In response, Abadie drew his gun, at which time defendant discarded his gun. At trial, Abadie testified that he found a loaded Glock 9 mm handgun on the ground. He identified it as the gun defendant had discarded.
The officers apprehended defendant, arrested him, and then transported him to jail. As part of the booking process, Abadie ordered defendant to remove his clothing and to empty his pockets. The officer searched defendant's clothing and found in the pants pocket a clear plastic packet containing six off-white, rock-like objects. Edgar Dunn of the Jefferson Parish Sheriff's Office Crime Lab testified that he tested the rock-like objects, and that the material was positive for cocaine.
At trial, both defendant and his girlfriend testified that he did not have a gun *865 on the night of the incident. Defendant also denied having any cocaine in his pocket. He stated that both Bryson and Abadie were involved in the booking process, and that the officers searched his pants, then produced the bag of crack.

DENIAL OF MOTION FOR MISTRIAL
In his first assigned error, defendant contends the trial court erred in denying his motion for mistrial based on prejudicial remarks made by a state witness, Deputy Thomas Bryson. Specifically, defendant argues that Bryson's comment that he knew defendant when he spotted him on August 31, 1997, constituted inadmissible "other crimes" evidence.
Defendant cites the following exchange, in which the prosecutor questioned Bryson about his actions after seeing two men engaged in a hand-to-hand transaction:
BY MR. MARY [prosecutor]:
Q. What did you do?
A. Wewe stopped toto investigate. Upon stoppingupon approaching to stop, one of the subjects that we'd known as Trohne Jones
MR. NETTERVILLE [defense counsel]:
Objection. Objection. Can we come to the bench, please?
At that point defendant moved for a mistrial, which was denied. The testimony proceeded as follows:
BY MR. MARY:
Q. So, you see somebody that you know, right?
MR. NETTERVILLE:
Objection; leading.
THE COURT:
You're leading your witness, Counselor.
BY MR. MARY:
Q. Who do you see standing out there?
A. A subject that we've known before as Trohne Jones. He was wearing a white
MR. NETTERVILLE:
Excuse me. I want to make my objection continuing, Judge.
THE COURT:
All right, so orderedso noted.
Defendant challenged the trial court's ruling on this issue in his motion for new trial. After a hearing, the court denied the motion, reasoning as follows:
The second item which the Defense raises is that the officers indicated that the defendant was known to them. And the State articulates veryquite eloquently and to the point that there is nothing illegal under the law that a police officer cannot know an individual within a community. I would daresay that there are those who are seated in this courtroom right now who know police officers and police officers know them.
Because the attorneys sometimes have in their possession certain information which is not available to other parties, there would seem to be some concern by the attorneys that in fact there is a prior criminal history which the police officers now make reference to. The jurors don't have that information. In fact the Defense has now admitted, whereas previously Iit was suggested that there was an arrest in factthe Defense has admitted that they're unable to produce any records which would show that the defendant was in fact arrested in May.
Defendant now argues that the testimony at issue led the jury to believe the officer was familiar with him from an earlier episode of criminal activity. Except under certain statutory or jurisprudential exceptions, evidence of other crimes or bad acts committed by the defendant is inadmissible at trial. LSA-C.E. art. 404 B(1); State v. Jackson, 625 So.2d 146 (La.1993); State v. Cangelosi, 98-589 (La.App. 5 Cir. 11/25/98), 722 So.2d 1107. LSA-C.Cr.P. art. 770 mandates a mistrial upon motion *866 of a defendant, "when a remark or comment made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to ... another crime committed or alleged to have been committed by the defendant as to which evidence is inadmissible."
The courts have consistently held that a police officer is not a "court official" for purposes of article 770. State v. Hayes, 414 So.2d 717 (La.1982); State v. Celestine, 98-1166 (La.App. 5 Cir. 3/30/99), 735 So.2d 109, writ denied, 99-1217 (La.10/8/99), 750 So.2d 178. However, as defendant points out, the jurisprudence provides that an impermissible reference to another crime deliberately elicited by the prosecutor is imputable to the state, and would therefore trigger the provisions of article 770. State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95.
We agree with the finding of the trial judge that a mistrial was not warranted in the instant case. First, there is no evidence in the record that the prosecutor was attempting to elicit information about other crimes or bad acts. Rather, the questioning was aimed at setting up the sequence of events leading to defendant's arrest. Secondly, there was no specific mention of a prior crime or bad act. The mere fact that a police officer testifies to having previously known the defendant does not amount to improper introduction of other crimes evidence, where there is no reference to a specific crime or criminal activity. State v. Sebble, 567 So.2d 160 (La.App. 4 Cir.1990); State v. Gray, 448 So.2d 119 (La.App. 2 Cir.1984), writ denied, 452 So.2d 695 (La.1984).
Based on the foregoing discussion, we find that the arguments raised by defendant in this assignment of error to be without merit.

JUROR CHALLENGES
In his second assignment of error, defendant asserts that the state violated his right to a fair trial by using its peremptory challenges to systematically eliminate African-Americans from his jury. Defendant refers to jurors Gloria Mahoney, Clarence Pryor, III, Patsy Lang, Marcus Washington, and Virginia Williams.
Equal protection guarantees that criminal defendants have the right to be tried by a jury selected by nondiscriminatory criteria. U.S.C.A. Const.Amend. 14. It is well established that the use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
To prevail on a Batson claim that a prosecutor has used peremptory challenges in a manner violative of the Equal Protection Clause, a defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of a juror's cognizable racial background. In determining whether the defendant has established a prima facie case of discrimination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against minority jurors, and any questions or statements by the prosecutor during voir dire examination or in the exercise of his challenges which may support or refute an inference of purposeful discrimination. Batson v. Kentucky, 476 U.S. at 98, 106 S.Ct. at 1722-1723; State v. Collier, 553 So.2d 815 (1989).
If a prima facie case is established, the burden shifts to the prosecutor to articulate a race neutral explanation for striking the jurors in question.[1] Finally, the trial court must determine whether the defendant has carried his burden of proving *867 purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson v. Kentucky, 476 U.S. at 96-98, 106 S.Ct. at 1722-1724. The Batson criteria are codified in LSA-C.Cr.P. art. 795. A trial judge's determination on a claim of purposeful discrimination rests largely on credibility evaluations, so his findings are entitled to great deference by the reviewing court. State v. Touissant, 98-1214 (La.App. 5 Cir. 5/19/99), 734 So.2d 961, writ denied, 99-1789 (La.11/24/99), 750 So.2d 980.
At the beginning of voir dire in the instant case, the court asked prospective jurors whether they knew of any reason they should be excused from service. Gloria Mahoney, an African-American, stated that she is unable to read or write, and that she only completed the sixth grade in school. For that reason she asked to be excused from the jury. The state moved the court to release Ms. Mahoney for cause, as she did not meet the qualifications to serve as a juror. Defense counsel argued against Ms. Mahoney's excusal, charging that the state had unfairly singled her out because she is a member of a minority with a higher than average rate of illiteracy. The court granted the state's motion, noting that there are certain minimum requirements for serving as a juror, and that one of them is the ability to read.[2]
Clarence Pryor, an African-American, informed the court that he suffered from schizophrenia, but that the illness was controlled through medication. He noted that he had taken his medication that morning, and that he would probably not have trouble understanding the testimony if he were to serve on a jury. The state nonetheless moved to release Mr. Pryor for cause, based on his illness. Defense counsel objected to the request. The judge denied the state's motion, and returned Mr. Pryor to the jury venire.
African-American Patsy Lang was seated in the first panel of prospective jurors. During questioning by the attorneys, she stated that she is a single nursing assistant with one daughter. She said she agreed with the laws that make narcotics illegal. She stated she could see finding a person guilty of drug possession even if they had discarded the drugs, as long as the police officers involved were certain they saw the person dispose of the contraband. She would require the state to prove the possession. When asked whether she had ever been a victim of crime, Ms. Lang stated that her "mate" had once abducted her and run over her with his car. He was subsequently convicted, and she was satisfied with the job the police had done in that case.
Defense counsel explained that the charge against defendant was simply an accusation by the state. He asked prospective jurors whether they believed an innocent person might be charged with a crime. Ms. Lang responded that she did. She later stated that she could apply the reasonable doubt standard as required by law. When questioned about what credence she would give a police officer's testimony, Ms. Lang stated that she thought an officer should be treated like anyone else.
The prosecutor used a peremptory challenge to excuse Ms. Lang. Defense counsel made a Batson challenge. Counsel argued there was a pattern of discriminatory challenges of African-American jurors, citing Ms. Mahoney and Mr. Pryor. The prosecutor responded that there was no pattern of discrimination under Batson, as Ms. Mahoney was excused for cause, and not pursuant to a peremptory challenge by the state. Further, Mr. Pryor had not been excused; he had simply alerted the court to his health problem. Ms. Lang was the *868 first African-American juror whom the state excused by way of a peremptory challenge. The prosecutor nevertheless offered an explanation for his use of a peremptory challenge to dismiss Ms. Lang: that she had chewed gum during the entire voir dire; she said pretty much all her schoolmates used cocaine;[3] and that she said, very loudly, that she believed innocent people can be charged with a crime. The trial judge denied the Batson challenge. He agreed with the state's argument that it was necessary that the court excuse Ms. Mahoney for cause due to her inability to read. The judge also believed the prosecutor was justified in requesting an excusal for cause as to Mr. Pryor, since the man's illness called into question his ability to serve as a juror. The court found no pattern of discrimination, and thus no prima facie case. Moreover, the court ruled that the reasons given for Ms. Lang's excusal were race neutral. The judge noted that Ms. Lang seemed fairly abrasive, and that she was the first one to yell out that she believed innocent people can be convicted. The judge stated that, "in open court observations of her conduct gave strong indications that she was perhaps against the State, against police officers...."
African-Americans Marcus Washington and Virginia Williams were on the second voir dire panel. In response to questioning, Mr. Washington stated that he had witnessed numerous narcotics transactions on the street and that he had seen about fifty narcotics arrests in progress. Washington said he had bad experiences with police, although that would not affect his ability to be impartial in this case. He went on to discuss how police officers "hit you a lot." He stated that, as a juvenile, he was caught stealing from an Eckerd's drugstore and was arrested by police. He said he keeps a shotgun in order to protect his home. Washington said he believed he could listen to the evidence and be fair.
Ms. Williams stated that she and her now ex-husband had retained defendant's attorney, Bruce Netterville, to represent the ex-husband in a 1990 DWI case. She said she had not seen Mr. Netterville since that time and that she could be impartial in this case. Ms. Williams further stated she owns a gun for protection and that she understands the law that bans possession of a gun while in possession of narcotics.
The prosecutor challenged Washington for cause, arguing the man had such bad experiences with police that he could not be trusted to be impartial. The court denied the challenge for cause, and the state subsequently used a peremptory challenge to excuse Washington. The defense raised a Batson challenge. The court again ruled that there was no pattern of discrimination. Moreover, the court found that the reasons given for excusing Mr. Washington were clearly race neutral.
The defense again made a Batson claim when the state used a peremptory challenge to excuse Ms. Williams. The prosecutor explained that he wished to excuse her because she had once employed defense counsel. The court found the explanation to be race neutral and denied the Batson challenge.
Defendant raised the Batson issue again in his motion for new trial. The trial court heard extensive argument on the issue, then again rejected defendant's claim. In so ruling, the judge explained that Batson pertains to peremptory challenges, and not challenges for cause. Two of the five prospective jurors referred to by defendant had been challenged for cause by the state. Moreover, one of those challenges for cause (Mr. Pryor) had been denied and that juror had been declared fit to serve. The judge stated that he believed the state had given non-racial reasons for exercising each of the peremptory challenges at issue.
We find that the trial court acted properly in denying defendant's Batson *869 challenges. Defendant did not establish a pattern of purposeful discrimination by the state, and thus, the state was not required to complete the second step in the Batson analysis.[4] The prosecutor nonetheless provided the court with race neutral explanations for his peremptory challenges of African-American jurors.
For these reasons, we find that the arguments raised by defendant in this assigned error are without merit.

DENIAL OF MOTION FOR NEW TRIAL
The issues defendant raises in assignments of error numbers one and two were raised in his motion for new trial. By this assignment, defendant contends that the trial court erred in denying his new trial motion for the reasons enumerated in those assignments. Having found defendant's first two assigned errors to be without merit, we likewise conclude that the trial judge did not err in denying his motion for new trial which was based, in part, on those grounds.

JURY CHARGES
In his final assigned error, defendant complains that the trial court erred in rejecting his request to instruct the jury as to the mandatory minimum sentence for the charged offense. LSA-R.S. 14:95 E provides that whoever commits the crime of possessing a dangerous weapon while in possession of a controlled dangerous substance "shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence."
It is well settled that, when a penalty imposed by statute is a mandatory one, the trial judge must inform the jury of the penalty on the request of the defendant. However, where the sentence is not mandatory and the court has the discretion to impose a sentence anywhere within the statutorily authorized range, the trial judge is not required to charge the jury on the authorized sentence, but may do so at his discretion. State v. Williams, 420 So.2d 1116 (La.1982); State v. Huls, 95-0541 (La.App. 1 Cir. 5/29/96), 676 So.2d 160, writ denied, 96-1734 (La.1/6/97), 685 So.2d 126 (La.1997).
The instant case did not involve a mandatory sentence, but a sentencing range. The trial court acted within its discretion in declining to give the proposed instruction.
Based on the foregoing, we find no merit to this assignment of error.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Our review reveals no such errors.
For the reasons set forth herein, the defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] If the defendant is unable to make a prima facie case of purposeful discrimination in the prosecutor's use of peremptory challenges, the Batson challenge automatically fails, and it is not necessary for the state to offer race neutral explanations. State v. Myers, 99-1803 (La.4/11/00), 761 So.2d 498; State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272.
[2] LSA-C.Cr.P. art. 401 A(3) provides that, in order to qualify for jury service, a person must "[b]e able to read, write and speak the English language and be possessed of sufficient knowledge of the English language."
[3] It is not evident in the record that Ms. Lang made such a statement.
[4] At this second step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. Purkett v. Elem, 115 S.Ct. at 1771.