STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1326


STATE OF LOUISIANA

VERSUS

JOSEPH SAVOY


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 08-K-5271-B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**OSWALD A. DECUIR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Oswald A. Decuir, Jimmie C. Peters, and J. David Painter, Judges.


**AFFIRMED.**


**Earl B. Taylor**
**District Attorney**
**Jennifer M. Ardoin**
**Assistant District Attorney**
**27th Judicial District Court**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-0551**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**Beth S. Fontenot**
**Louisiana Appellate Project**
**P. O. Box 3183**
**Lake Charles, LA 70602**
**(337) 491-3864**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Joseph Savoy**

**DECUIR, Judge.**

Defendant, Joseph Savoy, was convicted of aggravated kidnapping, a violation of La.R.S. 14:44, at a bench trial on July 26, 2011. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, consecutive to any other sentences he was already serving. This was Defendant's eighth felony; he was previously convicted of obscenity, simple burglary (twice), molestation of a juvenile, first degree robbery, aggravated rape, and armed robbery. Defendant appeals his conviction, alleging the trial court erroneously allowed DNA evidence to be introduced at trial without the testimony of the technician who cut the samples from which the DNA was extracted. Defendant's conviction is hereby affirmed.

## FACTS

On June 23, 1994, Defendant forced his way into the home of the forty-four year-old victim, J.S., and forced her to perform oral sex on him. After Defendant ejaculated on her, she wiped her face on her shirt. Defendant moved J.S. into a closet in her bedroom, closed the door, and moved a large chest of drawers and a bed in front of the door. Defendant took J.S.'s purse, stole her car, and fled the scene.

J.S. was unable to pick out Defendant from a photo lineup on November 24, 2008, more than fourteen years after the attack. At trial, however, she testified she did not know how she did not identify him from the lineup because his identity was so obvious to her at trial. She recognized "[t]hat round head and those sunken eyes," "that smirky look on his face," "[a]nd the size of him" with "not a shadow of a doubt" when she saw him in person.

At trial, J.S. identified the shirt she was wearing at the time of the attack. The shirt, when exhibited at trial, contained holes that had been cut in it that were not present when J.S. last wore it. The evidence revealed that, in 1994, Arthur Young, of the Acadiana Crime Lab (ACL), had cut out pieces of the shirt which appeared to contain semen stains. The cuttings were stored as evidence in the case and were later submitted for DNA testing. Eventually, the DNA profile generated from the cuttings was matched to Defendant, and he was implicated in this crime.

As his sole assignment of error in this appeal, Defendant contends the trial court violated Defendant's constitutional right to confront witnesses by allowing DNA evidence to be introduced without Mr. Young's testimony. For the following reasons, we find no merit to this assignment of error.

**EVIDENCE**

Carolyn Booker, forensic DNA analyst and administrator of the Combined DNA Index System (CODIS) database at the Acadiana Crime Lab in New Iberia, testified CODIS "contains DNA profiles from evidence and from individuals." DNA profiles of individuals convicted of felony offenses in Louisiana are entered into CODIS. Also entered are the DNA profiles generated from physical evidence recovered at the scene of a crime. Searches are performed using the database "in order to solve unsolved cases" by matching the DNA evidence.

When a serial killer appeared in Louisiana in 2002 and 2003, ACL and the State Police Lab received a grant from the Louisiana Legislature to review "old unworked sexual assaults" in an effort to find a living victim of the

2

murderer.[1] ACL went through its files of unsolved crimes back to 1986 that "had evidence or a potential for evidence to get a DNA profile." ACL outsourced approximately three hundred of the cases. When the work was completed, ACL reviewed the DNA profiles generated and entered them into CODIS.

When ACL gets a "hit" or a match on a profile it has entered into CODIS, Ms. Booker notifies the State Police Lab that ACL is interested in knowing the name of the convicted felony offender associated with the database number. The State Police Lab then retests its sample to verify that the same profile is generated. If it is, ACL is given the name, and ACL provides the name to the law enforcement agency that submitted the case. That agency obtains a new sample from the individual, and ACL works it to make sure it generates the same DNA profile. ACL does not rework the initial sample obtained from the victim.

Each case submitted to ACL by a law enforcement agency is assigned a number. When a sample comes into ACL and a number is assigned, the evidence custodian puts a chain of custody form with it and both are stored in a vault. The sample is assigned to a technician, such as Arthur Young, and a chemist. At some point, the technician does a preliminary examination of the sample; if there is anything to be removed or obtained from the item, the technician cuts it out and stores it "for now and perpetuity." Only cuttings are saved; the original items are returned to the submitting agency.

---

[1] The serial killer was later identified as Derrick Todd Lee, who was convicted through DNA evidence and sentenced to death. *State v. Lee*, 05-2098 (La. 1/16/08), 976 So.2d 109, *cert. denied*, 555 U.S. 824, 129 S.Ct. 143 (2008).

One of the items selected for analysis as a result of the Derrick Todd Lee case was a semen stain from J.S.'s shirt. Cuttings from the shirt had been taken by Mr. Young of ACL in 1994, given case number 94-2195, and stored until Ms. Booker sent them to DNA Reference Laboratories (DRL) in San Antonio, Texas for workup in J.S.'s unsolved case. Mr. Young's work, which did not involve DNA testing, was done before Ms. Booker and George Schiro, the DNA technical leader at ACL, were employed there.

Dr. Nasir Butt of DRL personally examined the cuttings from 94-2195 and generated a DNA profile that he subsequently submitted to ACL. The examination included an analysis that detected the presence of seminal fluid. Dr. Butt was confident the profile was accurate and scientifically valid. Mr. Schiro entered into CODIS the profile generated by Dr. Butt. The CODIS system indicated "a match or a hit" with "an individual in the [CODIS] data base" who was initially identified by a number.

Pursuant to this match, on September 30, 2004, Detective Bobby Howard of the Lafayette City Police Department obtained a search warrant for Defendant's blood sample. James Coley, a medical laboratory technician, drew Defendant's blood at the Louisiana State Penitentiary in Angola. Mr. Coley's practice was to verify a donor's identity, collect the sample, label it in the donor's presence, and place it in a sealed, tamper-proof container. He testified he collected Defendant's blood sample according to the protocol for seizing DNA evidence.

Mr. Schiro analyzed the blood stain card, made from Defendant's blood sample and assigned ACL number 04-4883, for DNA. He knew a CODIS match had been made with the sample from ACL number 94-2195. He

specifically looked to see if the blood from 04-4883 showed the same DNA profile as 94-2195. Mr. Schiro had a lot of confidence in the CODIS match "[b]ased on the quality control that is in place for that system," but he did not accept it without his own analysis. He found "[t]he DNA profile obtained from the – the shirt matched the DNA profile obtained to – to the reference blood sample of [Defendant]." He then determined "[t]o a reasonable degree of scientific certainty, [Defendant] was the source of the – of the DNA from the sperm fraction in that piece of shirt."

When Mr. Schiro testified at trial about the cuttings Mr. Young had taken, Defendant's counsel moved to exclude any testimony about "anything done on that shirt." He argued Mr. Young identified semen on the shirt and performed "the basic testing, the basic work on this whole case" and was "integral to any testimony." The trial court ruled "individuals need not be present for purposes of establishing" "the chain of custody, the authenticity of the sample, and the accuracy of the device," based on the Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527 (2009).

## ANALYSIS

The Sixth Amendment to the United States Constitution entitles Defendant to confront witnesses who bear testimony against him. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004). "'Testimony[]' is '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Id.* at 1364 (citation omitted). "The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits[]. . . ." *Melendez-Diaz*, 129 S.Ct. at 2542. Surrogate testimony "introduc[ing] a

5

forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification[]" does not satisfy the Confrontation Clause. *Bullcoming v. New Mexico*, __ U.S. __, 131 S.Ct. 2705, 2710 (2011).

Here, testing confirmed J.S.'s testimony that she wiped Defendant's semen on her shirt. Testimony about those tests, the profiles they generated, and the resulting DNA matches established and proved the facts. The tests, and the testimony about them, provided evidence against Defendant, not the act of cutting fabric which Mr. Young suspected to contain semen. Mr. Young made no "certification" to the court by clipping samples later subjected to tests, and his actions cannot be equated with the "'core class of testimonial statements'" envisioned by *Melendez-Diaz* and intended to prove a particular fact. 129 S.Ct. at 2532. The cutting of the samples merely preserved the basis for the tests and profiles that eventually provided the evidence against Defendant. "[I]t is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Id.* n.1.

In the course of the investigation of this crime, Mr. Young simply identified stains he suspected to be semen and preserved those samples according to ACL's protocol. Years later, Dr. Butt confirmed Mr. Young's suspicion and independently identified seminal fluid on the cuttings Mr. Young had collected. Dr. Butt offered the testimonial statement at trial that he developed a DNA profile from the cuttings. Ms. Booker offered the testimonial statement that the profile developed by Dr. Butt matched a DNA profile that

6

CODIS identified as belonging to Defendant. Mr. Schiro offered the testimonial statement that the blood sample given by Defendant in 2004, in response to the CODIS match, showed the same profile developed by Dr. Butt. All of these witnesses crucial to Defendant's identification – Dr. Butt, Ms. Booker, and Mr. Schiro – testified at trial and were subject to Defendant's cross-examination. Their testimony satisfied the Sixth Amendment and *Crawford/Melendez-Diaz/Bullcoming* requirement that testimonial statements must be subject to cross-examination.

By contrast, in *State v. Bolden*, 11-237 (La.App. 3 Cir. 10/5/11), ___ So.3d ___, the same Mr. Arthur Young actually tested the evidence and generated a DNA profile which was eventually matched to the defendant Bolden. This court determined that if the State was allowed to use the results of Young's work, then Young had to be made available for confrontation and cross examination. Such is not the case herein.

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**