# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-841

**STATE OF LOUISIANA**

**VERSUS**

**NOAH DRAKE PRIMEAUX**

**A/K/A NOAH PRIMEAUX**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. CR 84353
HONORABLE DAVID MICHAEL SMITH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**P.O. Box 2125**
**Lafayette, LA 70502**
**(337) 366-8994**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Noah Drake Primeaux**

**Noah Drake Primeaux**
**17544 Tunica Trace**
**Louisiana State Prison**
**Angola, LA 70712**
**In Proper Person**

**Hon. Keith A. Stutes**
**Fifteenth Judicial District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
  **State of Louisiana**

**Scott J. Privat**
**Assistant District Attorney**
**P. O. Box 288**
**Crowley, LA 70526**
**(337) 788-8831**
**COUNSEL FOR APPELLEE:**
  **State of Louisiana**

**GREMILLION, Judge.**

Defendant, Noah Primeaux, was indicted by a grand jury with first degree rape of a victim under the age of thirteen, a violation of La.R.S. 14:42. After being convicted by a unanimous twelve-person jury, Defendant was sentenced to life at hard labor without the benefit of parole, probation, or suspension of sentence. Defendant appeals his conviction raising three assignments of error.

## FACTS

The testimony at trial adduced the following: Nicole Semar, mother of the victim, V.G., had known Defendant for eighteen years at the time of the incident and had recently been engaged to him.[1] From May of 2014 to July of 2015, Ms. Semar lived with Defendant in the towns of Rayne and Richard. Her three children lived with them, and V.G. called Defendant "Dad."[2]

On July 6, 2015, the family was living with Ms. Semar's mother. Defendant and Ms. Semar were staying in the master bedroom, and V.G. was sleeping on the sofa. When Defendant and Ms. Semar retired to bed that evening, they engaged in sexual relations. In the early morning hours of July 6, 2015, Ms. Semar woke up and realized Defendant was not in bed. She found him in his truck having sexual intercourse with V.G., who was ten years old at the time. Ms. Semar confronted Defendant and he left, but five minutes later he returned, apologizing. Ms. Semar contacted police. Ms. Semar admitted to corresponding with Defendant while he was incarcerated and to requesting that the charges be dropped because she was still in love with Defendant despite what he had done.

V.G., fifteen at the time of trial, testified that around 1:00 or 2:30 a.m., the time Defendant "would wake [her] up . . . to have sex," she was awaked by

---

[1] The victim's initials are used in accordance with La.R.S. 46:1844(W).

[2] James George was V.G.'s legal father, having been listed on her birth certificate. Ms. Semar testified she does not know the identity of V.G.'s biological father.

Defendant and told to go to his truck. He joined her there and had sex with her. V.G. testified that this was not the first time Defendant had sex with her. V.G. confirmed that her mother interrupted Defendant and contacted the police.

Bethany Harris, a DNA Analyst with the Acadiana Crime Lab, analyzed seventeen samples taken the night of the event. Defendant objected to testimony about the results of testing on a sample identified as a penile swab on the grounds that Ms. Harris did not perform the swab. The characterization of this sample as a penile swab, Defendant agued, without the opportunity to confront and cross-examine the technician who actually performed the swab, violated his Sixth Amendment right to confront his accuser. The trial court overruled Defendant's objection and allowed the testimony.

Of the seventeen samples Ms. Harris analyzed, two contained no DNA. Two more had DNA from only one person. The rest contained "mixed profile" DNA, meaning the DNA was from more than one person. Testing done on DNA obtained from the crotch of Defendant's shorts and the crotch of his boxer shorts could not exclude either V.G. or Ms. Semar as contributors.[3] DNA obtained from the penile swab of Defendant could not exclude V.G. as a contributor.[4] Samples taken from the crotch of V.G.'s shorts could not exclude her or Ms. Semar as contributors.

Dr. Anne Troy, a nurse practitioner with the Audrey Hepburn Care Center, examined and treated V.G. She noted no trauma to V.G.'s genitalia. Dr. Troy testified that this was expected, due to the fact the tissue quickly regenerates. Dr.

---

[3] Statistically speaking, V.G.'s contribution of DNA was 740 billion times more likely than an unrelated individual to the material found on Defendant's shorts, and 640 billion times more probable than an unrelated individual to have contributed to the DNA taken from Defendant's boxer shorts.

[4] V.G.'s likely contribution of the DNA swabbed from Defendant's penis was 180 times more than that of an unrelated individual.

Troy explained that there is an increased ability to obtain DNA in adolescents and adults because a speculum can be used; however, this is not the case with a child V.G.'s age.

Defendant, through his counsel, argues that the conviction should be overturned because his right to confrontation was violated by the admission of testimonial evidence without the declarant being unavailable or subject to previous cross-examination. Because the evidence was offered for the truth of its assertion, Defendant contends a new trial should be granted. In his second assignment of error, Defendant argues that improper comments by the State during rebuttal argument denied him the right to a fair trial. Issues with disclosure of the field of expertise in which the State intended to qualify Dr. Troy form the basis of Defendant's third assignment of error presented by counsel. In a pro se brief, Defendant argues that the exclusion of Mr. Kenny Sinegal as a juror violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). Finally, Defendant, in his pro se brief, argues that the trial court erred in instructing the jurors that he could be convicted by a non-unanimous verdict.

## ANALYSIS AND DISCUSSION

In every criminal appeal before this court, we scrutinize the record for errors that are patent. La.Code Crim. P. art. 920. We find one. The sentencing transcript indicates that the trial court sentenced Defendant to life imprisonment without the benefit of probation, parole, or suspension of sentence, and that the sentence was to be served at hard labor. The court minutes, though, do not indicate that Defendant's sentence was to be served at hard labor.

"[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ*

3

*denied*, 00-2051 (La. 9/21/01), 797 So.2d 62.  Accordingly, we order the trial court to amend its minutes to correctly reflect the sentence is to be served at hard labor.

### *Assignment of error number 1*

Defendant contends that allowing Ms. Harris to testify to the identification of one of the DNA samples as a penile swab deprived him of his right to confront his accuser.  Because Ms. Harris did not herself procure the sample, Defendant argues, she had no firsthand knowledge of its source, and the medical personnel who actually took the swab should have been called to testify.  Additionally, Defendant was unable to question whether the nurse or doctor could have been the source of the additional DNA on Defendant's penis because, he contends, no masks or gloves were worn.  Defendant claims the improper admission of this evidence was not harmless beyond a reasonable doubt and should result in the granting of a new trial.

In *State v. Savoy*, 11-1326 (La.App. 3 Cir. 5/2/12), 109 So.3d 910, *writ denied*, 12-1114 (La. 10/26/12), 99 So.3d 641, the defendant contended that his constitutional right to confront witnesses was violated when the trial court allowed DNA evidence to be introduced without the testimony of the person who collected the evidence, some cuttings from a shirt which appeared to contain semen stains.  The DNA profile generated from the cuttings matched the defendant.  This court's analysis of the issue was as follows:

> The Sixth Amendment to the United States Constitution entitles Defendant to confront witnesses who bear testimony against him. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  "'Testimony [ ]' is '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Id*. at 1364 (citation omitted).  "The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits[ ] . . . ." *Melendez–Diaz*, 129 S.Ct. at 2542.  Surrogate testimony "introduc[ing] a forensic laboratory report containing a testimonial certification-made for the purpose of proving a particular fact-through the in-court testimony of a scientist who did not sign the certification

or perform or observe the test reported in the certification [ ]" does not satisfy the Confrontation Clause. *Bullcoming v. New Mexico*, ⸻ U.S. ⸻, 131 S.Ct. 2705, 2710, 180 L.Ed.2d 610 (2011).

Here, testing confirmed J.S.'s testimony that she wiped Defendant's semen on her shirt. Testimony about those tests, the profiles they generated, and the resulting DNA matches established and proved the facts. The tests, and the testimony about them, provided evidence against Defendant, not the act of cutting fabric which Mr. Young suspected to contain semen. Mr. Young made no "certification" to the court by clipping samples later subjected to tests, and his actions cannot be equated with the " 'core class of testimonial statements' " envisioned by *Melendez–Diaz* and intended to prove a particular fact. 129 S.Ct. at 2532. The cutting of the samples merely preserved the basis for the tests and profiles that eventually provided the evidence against Defendant. "[I]t is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Id*. n. 1.

In the course of the investigation of this crime, Mr. Young simply identified stains he suspected to be semen and preserved those samples according to ACL's protocol. Years later, Dr. Butt confirmed Mr. Young's suspicion and independently identified seminal fluid on the cuttings Mr. Young had collected. Dr. Butt offered the testimonial statement at trial that he developed a DNA profile from the cuttings. Ms. Booker offered the testimonial statement that the profile developed by Dr. Butt matched a DNA profile that CODIS identified as belonging to Defendant. Mr. Schiro offered the testimonial statement that the blood sample given by Defendant in 2004, in response to the CODIS match, showed the same profile developed by Dr. Butt. All of these witnesses crucial to Defendant's identification—Dr. Butt, Ms. Booker, and Mr. Schiro—testified at trial and were subject to Defendant's cross-examination. Their testimony satisfied the Sixth Amendment and *Crawford/Melendez–Diaz/Bullcoming* requirement that testimonial statements must be subject to cross-examination.

By contrast, in *State v. Bolden*, 11-237 (La.App. 3 Cir. 10/5/11), 103 So.3d 377, the same Mr. Arthur Young actually tested the evidence and generated a DNA profile which was eventually matched to the defendant Bolden. This court determined that if the State was allowed to use the results of Young's work, then Young had to be made available for confrontation and cross examination. Such is not the case herein.

*Id.* at 914. As in *Savoy*, the DNA analysis and Ms. Harris's testimony about it provided the evidence against Defendant, not the act of taking the penile swab. There was no "certification" made by the nurse to the court by gathering the penile

swab later subjected to testing, and, as in *Savoy,* the nurse's action cannot be equated with the "'core class of testimonial statements'" envisioned by *Melendez–Diaz* and intended to prove a particular fact. *Id.* For these reasons, Defendant's first assignment of error lacks merit.

### *Assignment of error number 2*

Defendant contends that the trial court erred in denying his motion for a mistrial after several allegedly improper comments by the State in its rebuttal closing argument. Taken as a whole, Defendant argues, these comments denied him his right to a fair trial. First, he notes the following comment made by the prosecutor:

> Another instruction that His Honor will give you is that "You may consider evidence of the defendant's commission of another crime, wrong or act involving sexually assaultive behavior or acts which indicate a lustful disposition towards children."

> Mr. Rubin discussed the situation in regards to his conviction for carnal knowledge of a juvenile. This was a conviction where the female was fourteen years old at the time of the commission, and Mr. Primeaux, I believe, was 26 years old, if the evidence bears me out through the testimony.

> The child was the niece of Mr. Primeaux's then wife. So there was a family relationship there. This was admitted in the evidence and it's very difficult to get into evidence, but it was admitted.

After Defendant's objection and an unrecorded bench conference, the court instructed the jury as follows:

> The jury is going to disregard the last comment in reference to whether it was difficult or not to admit evidence. Disregard that.

Defendant contends that this statement was false and completely irrelevant to the jury's determination of guilty. Further, he argues the statement was prejudicial because it implied that this evidence was admitted because the trial court determined that it was particularly strong or unusually worthy of admission.

The second comment at issue was:

6

It was also mentioned in regards to no seminal fluid being found, evidence of semen in the vaginal area which would come from the male after sexual intercourse. Two aspects of that. Dr. Troy testified that in the usual circumstances in regards to ejaculation, when there's evidence of ejaculation, in women, adult women - - or I think she used an age range of fifteen up to adult women, they don't use the instrumentation to - - I'm sorry, I'm being graphic, but to go up into the vaginal area to a recess deep enough to get the swab in regards to seminal fluid. They do not do that with children, let's say, below the age of fifteen or the age of ten or eleven, the age of [V.G.] at that time. That's not what they do. That's not the protocol so, therefore, there could have been seminal fluid up in there but it was not checked with swabs.

After an objection and unrecorded bench conference, the trial court instructed the jury to disregard the comment, and the prosecutor stated that the trial court was going to "strike that part."

Finally, Defendant points out the following comment made during the State's rebuttal closing argument insinuating that Ms. Semar may have delayed disclosing Defendant's alleged sexual abuse of her children because she had been the victim of domestic abuse at the hands of Defendant. The defense commented that Ms. Semar would not have continued her relationship with Defendant and expressed her love for him in letters written during his incarceration after witnessing him raping her daughter. During his rebuttal, the prosecutor stated:

Finally, Mr. Rubin indicates in regards to Nicole Simar [sic] and situations regarding letters written, testimony given as to her feelings during that period of time as far as Mr. Primeaux, he stressed - - Mr. Rubin stressed that nobody is capable of doing that, to knowingly ignore, disregard previous molestation or sexual intercourse at the hands of someone they love. I pray to God that no one here in this courtroom is capable of doing that, but how many times have we heard where a battered woman takes a perpetrating boyfriend back - -

After an objection, an unrecorded bench conference was held, and the trial court instructed the jury to disregard any references to battered women as there was no evidence in the record of "any of that."

7

After the jury retired to deliberate, defense counsel addressed the motion for mistrial he had previously made after the "battered woman" comment. His argument focused first on the following section of La.Code Crim.P. art. 770:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> . . . .
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
>
> . . . .
>
> An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

Defense counsel also argued that a mistrial should be granted under La.Code Crim.P. art. 775, which provides in pertinent part:

> A mistrial may be ordered, and in a jury case the jury dismissed, when:
>
> . . . .
>
> (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
>
> . . . .
>
> Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

Defense counsel proceeded with his argument in support of the motion for mistrial as follows:

> Here what the State said goes to the core of the case. This is not a collateral issue. It goes to the core of the issue in this case, which was the testimony and credibility of Nicole Semar and [V.G.] Those are the ultimate issues in this case. And it alludes effectively to

battered women syndrome. Intention or not, it certainly implied that Noah Primeaux hit Nicole Semar and that Nicole Semar is a battered woman. There's no question about that. That's what it suggested. It is extraordinarily prejudicial in the circumstances.

In addition, I made my objection but that was after two other comments made by the State that I objected to and that Your Honor sustained.

So, I think under the circumstances, the totality of the circumstances, that the admonition that you made to the jury to strike the comment was insufficient and at the end of the State's rebuttal, on the response to my arguments about the motives and actions of the State's critical witness, the State failed effectively as well. We know about that. There's only vocation and only one suggestion from the State that the jury could refer and take from that.

And I think, honestly, Judge, I think that, put together with the first comment, that evidence is extraordinarily difficult to get in, alludes to the idea that maybe there was something else that the jury didn't hear.

And I just think a mistrial is warranted under the circumstances.

BY MR. DOGA: Your Honor, in regards to that comment, I was speaking in regards to nobody is capable - - I was making an illustration, hypothetically in regards to being capable of doing that. There was not any illusion to any other bad acts on the part of the defendant.

THE COURT: I agree. The motion for mistrial will be denied. Noting specifically your objection, I think as far as the battered women syndrome before he objected, there was no reference to anybody in the courtroom, a victim or the children. While the motion is denied, at the same time there is no basis for a mistrial. So, yes, that will be denied. I see no harm. And a limiting instruction is included. All right.

Of the three comments, only the "battered woman" comment possibly falls under La.Code Crim.P. art. 770 which requires a mistrial, not an admonition (unless only admonition is requested by defense).

In *State v. Blanchard*, 99-599 (La.App. 5 Cir. 11/10/99), 749 So.2d 19, *affirmed in part, reversed in part on other grounds*, 99-3439 (La. 1/18/01), 776 So.2d 1165, the trial court granted the defendant's motion in limine and ordered the state to refrain from making or eliciting any reference to possession of cocaine,

a charge of which he had been acquitted. During questioning, though, the prosecutor asked a detective about other arrests, albeit without specific reference to possession of cocaine. The defendant moved for a mistrial, which was denied.

On appeal, our colleagues noted that mistrial is a drastic remedy reserved only for instances of substantial prejudice to the defendant. Further, when the verdict is "unattributable to any error which might have been committed by the trial court's failure to grant a mistrial[,]" allowing the improper evidence constitutes harmless error. *Id.* at 30. We agree with this analysis.

In the present case, the prosecutor offered an explanation of how a mother could still love and communicate with someone who she witnessed raping her daughter after the defense had stated that no one is capable of doing that if the incident actually happened. We conclude that this did not clearly constitute a comment on a crime committed or alleged to have been committed by Defendant.

It is not clear from the record whether defense counsel moved for a mistrial when the two remaining comments were made as the bench conferences were unrecorded; however, it appears as though they were simply objected to and then included in the motion for mistrial when the motion was made concerning the third comment. Assuming a mistrial was sought for the first two comments, they fall under the section of La.Code Crim.P. art. 775 *allowing* for a mistrial when there is a legal defect in the proceedings which would make any judgment reversible as a matter of law or *requiring* a mistrial when prejudicial conduct makes it impossible for the defendant to obtain a fair trial. Neither of the comments, which concerned the difficulty associated with admitting other crimes' evidence and the possible presence of seminal fluid in the victim had the protocol for adult testing been followed, would not make any judgment reversible as a matter of law and did not make it impossible for Defendant to obtain a fair trial.

10

Further, even assuming the trial court erred in denying the motion for mistrial, the verdict rendered in this case was surely unattributable to any error that might have been committed, rendering the error harmless. *See State v. Johnson*, 94-1379 (La. 11/27/95), 664 So.2d 94. This is true even considering the prosecutor's comments collectively. The jury heard consistent testimony about the offense from the victim and her mother, and there was DNA evidence presented supporting their testimony. This assignment of error lacks merit.

### *Assignment of error number 3*

Defendant contends that reversible error resulted when the trial court allowed the State to qualify its expert in an area of expertise not disclosed to the defense until trial, specifically Dr. Anne Troy's qualification as an expert in delayed disclosure. Having not been informed of the State's intent to offer Dr. Troy as an expert in this field, the defense objected. Two days earlier, the defense received Dr. Troy's curriculum vitae, which, he maintains, contained nothing indicating that she was to be qualified as an expert in delayed disclosure. Defendant asserts that he was prejudiced by this violation because Dr. Troy's testimony supported the State's theory explaining why there was no previous disclosure and reinforced the credibility of the two juvenile witnesses, the victim and her younger sister. Defendant contends that Dr. Troy's testimony that rape victims commonly do not report assaults was highly prejudicial because of the lack of physical evidence from either the Defendant's truck or the victim's sexual assault exam.

At trial, the State tendered Dr. Ann Troy an as expert in child abuse, pediatrics, child sexual abuse, delayed disclosure, and physical findings in child sexual abuse cases. The defense objected, and a bench conference was held off the record. However, defense counsel later presented a more detailed argument to the

11

court out of the presence of the jury based on La.Code Crim.P. art. 719, contending he had not received prior notice of the nature of the doctor's testimony.

The State argued that Dr. Troy's reports indicated that she examined and tested the victim and that she would testify as an expert in "nurse practitioner, not for the sole purpose of a SANE nurse who just does a forensic examination and take samples."

Louisiana Code of Criminal Procedure Article 719 provides, in pertinent part:

> A. Upon written motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of a physical or mental examination, and of scientific tests or experiments, made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial. If the witness preparing the report will be called as an expert, the report shall contain the witness's area of expertise, his qualifications, a list of materials upon which his conclusion is based, and his opinion and the reason therefor. If the expert witness has not reduced his results to writing, or if the expert witness's written report does not contain the information required of an expert as provided in this Article, the state must produce for the defendant a written summary containing any information required to be produced pursuant to this Article but absent from a written report, if any, including the name of the expert witness, his qualifications, a list of materials upon which his conclusion is based, and his opinion and the reason therefor.

Dr. Troy's curriculum vitae includes a list of approximately fifty times she has testified as an expert in the field of child abuse pediatrics, specifically child sexual abuse, delayed disclosure, and physical findings in child sexual and physical abuse. Dr. Troy's report, which was provided to the defense, indicated that V.G. related a history of chronic sexual abuse to Dr. Troy. The defense was also aware of the State's intent to introduce Defendant's prior abuse of the victim and her sister, and, over the defense's objection, the court found the evidence admissible approximately one month prior to trial.

Under these circumstances, the trial court did not err in allowing Dr. Troy to testify as an expert in delayed disclosure. This assignment of error lacks merit.

***Pro se assignment of error number 1***

Defendant contends that his trial counsel erred in failing to challenge the exclusion of prospective juror Kenny Sinegal with an objection made in accordance with *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). Had his attorney challenged the removal of this juror, Defendant argues, the prosecutor could not have offered race-neutral reasons for targeting him.

Defendant calls this court's attention to the following exchange held between the trial court and counsel out of the presence of the prospective jurors:

> THE COURT: Mr. Sinegal. I would prefer that they take [Kenny Sinegal] outside before they arrest him and not do it in the courtroom.
>
> MR. RUBIN: I understand. That would be wrong to remove him in front of the jurors. I want the record to reflect that I'm disappointed that he comes for jury duty and he gets arrested.
>
> THE COURT: I don't want him paraded out in handcuffs either. So take him downstairs and do what they got to do downstairs.
>
> MR. PRIVAT: But would you really want him on the jury if he's arrested for possession of cocaine?
>
> THE COURT: They ran the arrest warrant.
>
> MR. DOGA: We have arrested people before.
>
> MR. PRIVAT: When I asked, "What do you think about the Rayne Police Department," he said it was not good.
>
> MR. DOGA: He was one that I wanted on there because he would be subject to challenge for cause.
>
> MR. RUBIN: I want the record to reflect that it was because they happened to run the search.
>
> THE COURT: How did this come up?
>
> MR. PRIVAT: Angie brought it to me.

13

MR. RUBIN:  It's troubling to me that he comes here for jury and gets arrested.

MR. PRIVAT:  But do you want a guy arrested for distribution of cocaine on [sic] be on the jury?

MR. RUBIN:  I'm not saying that, but it's troubling to me representing an African American man and he's walked out of the courtroom in handcuffs[.]

. . . .

THE COURT:  All right.  What we'll do with Mr. Sinegal is we'll continue with voir dire.  When that happens and we come in the back for challenges, then I will remove him on the record.

MR. RUBIN:  Good.  I don't want him to be seen with any law enforcement.

THE COURT:  All right.  Let's go back.

Simply stated, a warrant for Mr. Sinegal's arrest was pending, and the trial court did not want the execution of the warrant to influence the outcome of Defendant's trial.  However, the record paints an amorphous picture in which it remains unclear whether Mr. Singeal was excused for cause or was peremptorily challenged.  The State challenged him for cause.  The defense did not object.  The trial court had already indicated that Mr. Sinegal would be removed.  Later, though, the State exercised a peremptory challenge to him.

Assuming *arguendo* that Mr. Sinegal was released by a peremptory challenge, had defense counsel raised a *Batson* challenge, the State could readily state a race-neutral reason for that challenge, the pending drug arrest, and, indeed, had already articulated it on the record.  This assignment of error lacks merit.

*Pro se assignment of error number 2*

The jury was instructed that at least ten of its members must concur to convict Defendant.  The trial was held prior to the decision in *Ramos v. Louisiana*, ___ U.S. ___, 140 S.Ct. 1390 (2020), which declared non-unanimous verdicts unconstitutional.  *Ramos* did not address the issue of erroneous jury instructions

14

regarding non-unanimous verdicts, and it certainly did not address whether such instructions would render invalid Defendant's unanimous verdict.

Defendant contends the error in the jury instruction is a structural error which requires reversal of his conviction and sentence. As support, Defendant relies on *Sullivan v. Louisiana*, 508 U.S. 275, 280-82, 113 S.Ct. 2078, 2082-83 (1993) in which the Supreme Court stated:

> Insofar as the possibility of harmless-error review is concerned, the jury-instruction error in this case is quite different from the jury-instruction error of erecting a presumption regarding an element of the offense. A mandatory presumption—for example, the presumption that a person intends the ordinary consequences of his voluntary acts—violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). But "[w]hen a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt." *Rose v. Clark, supra*, 478 U.S., at 580, 106 S.Ct., at 3107. And when the latter facts "are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed." *Carella v. California*, 491 U.S. 263, 271, 109 S.Ct. 2419, 2423–2424, 105 L.Ed.2d 218 (1989) (SCALIA, J., concurring in judgment). See also *Pope, supra*, 481 U.S., at 504, 107 S.Ct., at 1923 (SCALIA, J., concurring). A reviewing court may thus be able to conclude that the presumption played no significant role in the finding of guilt beyond a reasonable doubt. *Yates, supra*, 500 U.S., at 402–406, 111 S.Ct., at 1892–1894. But the essential connection to a "beyond a reasonable doubt" factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates all the jury's findings. A reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, "the wrong entity judge[s] the defendant guilty." *Rose, supra*, 478 U.S., at 578, 106 S.Ct., at 3106.
>
> Another mode of analysis leads to the same conclusion that harmless-error analysis does not apply: In *Fulminante*, we distinguished between, on the one hand, "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards," 499 U.S., at 309, 111 S.Ct., at 1265, and, on the other hand, trial errors which occur "during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented," *id.*, at 307–308, 111 S.Ct., at 1252, 1264. Denial of the right to a jury verdict of guilt beyond a

15

reasonable doubt is certainly an error of the former sort, the jury guarantee being a "basic protectio[n]" whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function, *Rose, supra*, 478 U.S., at 577, 106 S.Ct., at 3105. The right to trial by jury reflects, we have said, "a profound judgment about the way in which law should be enforced and justice administered." *Duncan v. Louisiana*, 391 U.S., at 155, 88 S.Ct., at 1451. The deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error."

A jury instruction on the number of jurors required to render a verdict, is distinguishable from the issue of a constitutionally deficient reasonable doubt jury instruction, the issue presented in *Sullivan*. Prior to *Ramos*, Oregon, like Louisiana, required only ten of twelve jurors to render a verdict. In *State v. Forshee*, 455 P.3d 1025, 1027, n.2 (Or. Ct.App. 2019), the court noted that an error in instructing a jury that a non-unanimous verdict sufficed was found to be harmless error where a unanimous verdict was returned:

> Furthermore, in a supplemental assignment of error, defendant contends that "[t]he trial court erred in instructing the jury that it could reach a nonunanimous verdict on the charge of murder," because "Article I, section 11, of the Oregon Constitution requires jury unanimity as to a murder charge," and because "[t]he Sixth and Fourteenth Amendments [to the United States Constitution] require unanimous verdicts." We reject defendant's federal constitutional arguments, on the merits, without further discussion. Defendant is correct that, under Article I, section 11, "unanimity [i]s required for the jury to convict defendant of murder." *State v. Lomax*, 288 Or. App. 253, 261, 406 P.3d 94 (2017). Under the circumstances of this case, however, we conclude that the instructional error was harmless. Despite the trial court's instruction that the jury could reach a nonunanimous verdict for murder, the jury returned a unanimous guilty verdict. Moreover, defendant did not dispute that he shot and killed the victim and we find nothing in the record that indicates that the jury would have rendered a nonunanimous verdict had it been instructed that its verdict must be unanimous. Hence, the asserted error does not supply a basis for us to reverse the judgment. *See State v. Davis*, 336 Or. 19, 32, 77 P.3d 1111 (2003) ("Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?").

Although not expressly stated, it appears that our colleagues on the first circuit have viewed this as a harmless error as opposed to a structural, reversible error:

> In his third assignment of error, the defendant argues the trial court erred in not instructing the jury that a unanimous verdict was required.
>
> There is no merit to this argument, which has been repeatedly raised without success. Moreover, in the instant case, the defendant's guilty verdict for second degree murder was unanimous.

*State v. Swan*, 18-320, p. 15 (La.App. 1 Cir. 12/17/18) (unpublished opinion), *writ denied*, 19-151 (La. 5/20/19), 271 So.3d 1270.

We hold that the erroneous jury instruction given in this case was rendered harmless by the return of a unanimous verdict. Defendant's second pro se assignment of error lacks merit.

## DECREE

The conviction of Defendant, Noah Primeaux, of aggravated rape of a victim under the age of thirteen is affirmed. The trial court is ordered to amend its minutes of sentencing to reflect that Defendant's sentence is to be served at hard labor.

**AFFIRMED.**

17